UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

BARBARA J. KING,                                    14-CV-974-RJA-MJR

                              Plaintiff,            REPORT AND
                                                    RECOMMENDATION

            v.

TERENCE JAMES, Individually and as Assistant
General Manager and Human Resources;
UNIQUEST HOSPITALITY, LLC,

                              Defendants.

_____

## INTRODUCTION

This case has been referred to the undersigned pursuant to Section 636(b)(1)(A)

and (B) of Title 28 of the United States Code, by the Honorable Richard J. Arcara, for the

hearing and reporting of dispositive motions for consideration by the District Court.  Plaintiff

Barbara King ("plaintiff"), a former employee of defendant Uniquest Hospitality, LLC

("defendant" or "Uniquest") claims that Uniquest and defendant Terence James ("James"),

an Assistant General Manager for Uniquest, discriminated and retaliated against her in

violation of Title VII of the Civil Rights Act of 1964, the New York State Human Rights Law,

the Equal Pay Act, and the Family and Medical Leave Act.

Before the Court is defendants' motion for summary judgment pursuant to Rule 56

of the Federal Rules of Civil Procedure.  (Dkt. Nos. 21-23)  Plaintiff filed a response to

defendants' motion on September 20, 2016 (Dkt. No. 25), and defendants filed a reply on

October 4, 2016 (Dkt. No. 26).  Oral argument was heard on October 18, 2016, at which

time the Court considered the matter submitted.

For the following reasons, it is recommended that defendant Uniquest's motion for

summary judgment be denied as to plaintiff's claim under the Equal Pay Act.  Because neither party has addressed the merits of plaintiff's claim that Uniquest retaliated against plaintiff by eliminating the Guest Ambassador position, it is recommended that this claim proceed without prejudice to defendant Uniquest's right to conduct limited discovery and to file a renewed motion for summary judgment as to this claim only.  It is further recommended that defendant Uniquest and defendant James' motion for summary judgment be granted as to all remaining claims.

## RULE 56 STATEMENTS AND INITIAL DISCLOSURES

A litigant seeking summary judgment must demonstrate to the Court that no material facts are in dispute.  Conversely, a party opposing summary judgment must establish the presence of a material factual dispute.  To that end, Rule 56 of the Federal Rules of Civil Procedure contains specific requirements for making, or responding to, a motion for summary judgment:

> A party asserting that a fact cannot be or is genuinely disputed must support the assertion by: citing to particular materials in the record including depositions, documents, electronically stored information, affidavits or declarations...admissions, interrogatory answers, or other materials; or showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

See Fed. R. Civ. P. 56.  Likewise, Local Rule 56 for the Western District of New York provides that every summary judgment motion must contain a numbered statement of material facts to which "the moving party contends there is no genuine issue to be tried."  See L.R. Civ. P. 56.  Local Rule 56 further requires that a party opposing a summary judgment must submit "a response to each numbered paragraph in a moving

party's statement in correspondingly numbered paragraphs." *Id*.

Both Local Rule 56 and Federal Rule of Civil Procedure 56 set forth specific remedies for a party's failure to either properly assert undisputed facts in support of their request for summary judgment, or properly dispute an opposing party's submission of facts. Local Rule 56 states that "each numbered paragraph in the moving party's statement of material facts may be deemed admitted for purposes of the motion unless it is specifically controverted by a correspondingly numbered paragraph in the opposing statement." *See* L.R. Civ. P. 56. Similarly, Federal Rule of Civil Procedure 56 provides that if a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact, a court may: "(1) give [the party] an opportunity to properly support or address the fact; (2) consider the fact undisputed for purposes of the motion; (3) grant summary judgment if the motion and supporting materials show that the movant is entitled to relief; or (4) issue any other appropriate order." *See* Fed. R. Civ. P. 56(e).

Here, defendants submitted a 59-paragraph "Statement of Undisputed Facts Pursuant to Rule 56" ("Statement of Undisputed Facts") in support of their motion for summary judgment. (Dkt. No. 23) Defendants' Statement of Undisputed Facts is supported by citations to plaintiff's deposition, various affidavits of individuals with personal knowledge of events at issue in the lawsuit, and other documentary evidence in the record. Plaintiff has not filed a counter-statement of facts as required by Local Rule 56, nor does she demonstrate, through citations to the record or her own evidence, that any of the facts offered by defendants are in dispute. Instead, plaintiff seems to argue that summary judgment must be denied because the evidence cited by

3

defendants is supplied by current or former Uniquest employees, who are inherently biased, and because the nature of her allegations alone demonstrates that there is an issue of fact as to Uniquest's motivation in making various employment decisions. Plaintiff also argues that defendants should be precluded from offering the witnesses or evidence cited in their motion because they never served initial disclosures.

Contrary to plaintiff's assertions, she is required, at this summary judgment stage of the proceeding, to present admissible evidence in support of her allegations and in opposition to defendants' Statement of Undisputed Facts. Indeed, a party opposing summary judgment "cannot defeat the motion by relying on the allegations in [her] pleadings, or on conclusory statements, or on mere assertions that affidavits supporting the motion are not credible." *Gottlieb v. The County of Orange,* 84 F.3d 511, 518 (2d Cir. 1996); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986) (holding that Federal Rule of Civil Procedure 56(e) "requires the nonmoving party to go beyond the pleadings and by her own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial"). Moreover, since plaintiff has completely failed to respond to defendants' Statement of Undisputed Facts, the Court will regard defendants' assertions of fact as true and grant summary judgment if warranted based upon the applicable law and the facts as presented by defendants. *See Dusanenko v. Maloney*, 726 F.2d 82, 84 (2d Cir. 1984) (where plaintiff presented no affidavits or other evidence to controvert the assertions made in defendants' statement of facts in support of their motion for summary judgment as to plaintiff's Section 1983 claims, but instead relied only on assertions in their complaint and memorandum of law that defendants were motivated

"solely by political vindictiveness", the facts set forth in defendants' statement of facts were properly deemed admitted and entry of summary judgment dismissing the complaint was appropriate); *Gubitosi v. Kapica,* 154 F.3d 30, 31 n. 1 (2d Cir. 1998) (accepting as true the material facts contained in the moving party's statement of facts because the non-moving party failed to file a response).

In addition, the Court rejects plaintiff's argument that defendants should be precluded from relying on the witness affidavits offered in support of their motion because defendants did not comply with the initial disclosure requirements of Rule 26 of the Federal Rules of Civil Procedure.  Federal Rule of Civil Procedure 37(c)(1) indicates that if a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence unless the failure was "substantially justified or is harmless."  *See* Fed. R. Civ. P. 37(c)(1).  Here, any failure in defendants' serving of initial disclosures was both justified and harmless.  Defendants' counsel submits an affirmation indicating that he served, via hand delivery on January 17, 2016, a package to plaintiff's counsel which included a number of discovery requests, a notice of deposition and Rule 26 initial disclosures.  (Dkt. No. 26-1, ¶¶4-5)  Defendants' counsel further affirms that he and plaintiff's counsel spoke numerous times in the following months regarding the case and discovery, and plaintiff's counsel never indicated that they had not received initial disclosures.  (Id. at ¶¶7-8)  Indeed, no motion to compel was ever brought before this Court by plaintiff seeking initial disclosures, or any other discovery for that matter.  Plaintiff made no attempt to confer with opposing counsel.  The undisputed facts in the record clearly demonstrate that defendants intended to comply with Rule 26 and that

one telephone call to defense counsel by plaintiff's counsel would have resolved this issue.  In addition, any lack of initial disclosures by defendants is harmless.  The record reflects that defendants responded, in detail, to four Equal Employment Opportunity Commission ("EEOC") charges and a Department of Labor ("DOL") complaint, all by plaintiff, regarding the very same subject matter at issue in this lawsuit.  Therefore, the vast majority of witnesses and evidence cited in support of defendants' position has been known to plaintiff since before the filing of the instant lawsuit.[1]

## SUMMARY OF THE FACTS

Uniquest, a division of Uniland Development Company, owns and operates the Embassy Suites Hotel (the "Embassy Suites") located in Buffalo, New York.  (Dkt. No. 21-3, ¶2)   Plaintiff was hired by Uniquest as a Guest Services Agent at the Embassy Suites on February 9, 2011 at a salary of $9.00 per hour.  (*Id*. at ¶¶10-11)  Plaintiff's duties included customer service and checking guests in and out of the hotel.  (*Id*. at ¶12; Exh. 4)  Plaintiff's direct supervisor at the time she was hired was Jamell Yarborough, who was employed as a Front Desk Supervisor.  (Dkt. No. 21-1, ¶21, Exh. 8, pg. 59)  Mr. Yarborough's supervisor was Terence James, who was employed in an Assistant General Manager/Human Resources position.  (*Id*.)

Uniquest states that employee compensation is set and increased "commensurate with performance, education, background experience in hospitality,

---

[1]  For substantially the same reasons, the Court rejects plaintiff's argument that defendants should be precluded for asserting certain affirmative defenses with regard to the Equal Pay Act Claim.  Not only did plaintiff fail to confer with defendant when initial disclosures were not received, but plaintiff was on notice of these defenses because they were asserted in defendants' answer and raised in response to plaintiff's administrative charges.

market rates, and other business concerns such as the overall performance of the hotel." (Dkt. No. 21-3, ¶13)  At the time she was hired, plaintiff had six months of hospitality experience and no post-high school education.  (*Id*. at ¶¶16, 17)  Jonathan Collymore, a male Guest Services Agent with no hospitality experience and a college degree in English, earned $10.00 per hour at the time of hire.  (*Id*. at ¶18)  Mitchell Dayquan, a male Guest Services Agent with two years of hospitality experience and a college degree in hotel management also earned $10.00 per hour.  (*Id*.)  Shawn Conley, a male Guest Services Agent with no hospitality experience who had taken some college courses in hospitality, but did not have a degree, was also hired at $10.00 per hour.  (*Id*.)  In contrast, Rahkeda Brown, a female Guest Services Agent with one year and six months hospitality experience and some college credits, but no degree, was hired at $9.00 an hour.  (*Id*.)  Nicole Mead, a female Guest Services Agent with four months of hospitality experience and a college degree in hospitality, also earned $9.00 per hour.  (*Id*.)  Tina Vegas, a female Guest Services Agent with one year and three months hospitality experience and a college degree in hospitality, earned $10.00 per hour.  (*Id*.)

On or about June 25, 2011, plaintiff received a written warning for failure to follow proper cash-handling procedures.  (*Id*. at ¶23, Exh. 6)  On June 30, 2011, plaintiff filed an internal complaint about the written warning as well as "unwelcome behavior and harassment" from her supervisor Mr. Yarborough. (Dkt. No. 21-1, ¶21, Exh. 8, pg. 65)  When asked at her deposition what she considered to be unwelcome behavior and harassment, plaintiff indicated that Mr. Yarborough refused to train her and refused to

answer her questions about front desk duties.  (*Id.*)

On September 9, 14, and 30, 2011, plaintiff received written warnings for failing to properly check-in guests, failing to request specific amenities which a guest had paid for resulting in a refund, failing to complete a morning check-list, and failing to properly list a room as occupied resulting in hotel guests returning from lunch to find other guests occupying their suite.  (Dkt. No. 21-3 at ¶24, Exhs. 7, 8, 9)  Laura Masters, Human Resources Manager for Uniland, asserts that despite these difficulties, Uniquest felt plaintiff had the capability to perform for the Embassy Suites in a different role.  (*Id.* at ¶25)  The position of Guest Ambassador was created for plaintiff.  (*Id.*)  This position required hospitality work for the Food and Beverage Department, and specifically for the daily Manager's Reception for special and preferred guests.  (*Id.* at ¶26)  The job responsibilities also involved coverage of the front desk while Guest Services Agents took breaks.  (*Id.*)  Plaintiff began working in the Guest Ambassador role on November 2, 2011.  (*Id.* at ¶29)  Typically, plaintiff would cover the front desk from either noon or 1:00 p.m. until 4:00 p.m.; she would then perform hospitality functions, including overseeing the Manager's Reception, from 4:00 p.m. to 8:00 p.m.  (*Id.* at ¶27; Dkt. No. 21-1, Exh. 8, pg. 78)  Masters asserts that because plaintiff spent more of her time performing tasks related to the Manager's Reception than front desk tasks, Uniquest classified the Guest Ambassador position as a Food and Beverage Department position rather than a front desk position.  (Dkt. No 21-3; *Id.* at ¶28)  Uniquest also offered a job description for "Food Server" as indicative of the duties of the Guest Ambassador position.  (*Id.* at ¶27, Exh.10)  However, plaintiff testified during her deposition that she

was never a Food Server, and that, to her knowledge, the Guest Ambassador position was not part of the Food and Beverage Department.  (Dkt. No. 21-1, Exh. 8, pg. 78) Plaintiff described the duties and responsibilities of Guest Ambassador as "to meet and greet the guests coming into the Manager's Reception, make sure the tables were kept clean, replenish the snacks...perform concierge duties, make reservations for guests, ask them how their rooms were, troubleshoot for problems." (*Id*. at 78)  Plaintiff described the Guest Ambassador as a "liaison to the front desk to better serve our guests." (*Id*.)

As a result of her performance review, plaintiff received an increase in her compensation from $9.00 per hour to $9.28 per hour.  (Dkt. No. 21-3*,* ¶30)   This raise was applied retroactively beginning February 12, 2012.  (*Id.*)

Plaintiff applied for, was granted and took a leave of absence, pursuant to the guidelines of the Family and Medical Leave Act, from June 25, 2012 through September 9, 2012.  (*Id*. at ¶34)  On or about September 9, 2012, plaintiff was cleared to return to work without restrictions.  (*Id*. at ¶36, Exh. 12; Dkt. No 21-2, ¶8, pgs. 89, 92) She was returned to the same, full-time position of Guest Ambassador at the same rate of pay and with the same benefits, terms and conditions of employment as she had prior to her leave.  (Dkt. No. 21-3, ¶39)  Plaintiff's first day back at work was September 11, 2012, and she worked 15.2 hours between September 11, 2012 and September 15, 2012.  (*Id*. at ¶38, Exh. 13; Dkt. No 21-1, ¶8, pg. 89)

Also during the fall of 2012, around the time that plaintiff returned from leave, there was a lull in hotel business which contributed to an overall decrease of all

employee hours. (Dkt. No. 21-3, ¶43)   Specifically, the Embassy Suites hosts all out-of-town professional hockey teams who travel to Buffalo during hockey season. (*Id*. at ¶44) Because of extended contract negotiations between the National Hockey League ("NHL") and the Player's Association that year, the hockey season did not begin in September of 2012 and the Embassy Suites lost a great deal of travel revenue. (*Id*.) A number of changes and cost-cutting measures were undertaken. (*Id*. at ¶45) Exempt employees took over duties of hourly employees to reduce payroll expenses and overtime. (*Id*.) The reduction in total employee hours between the hockey season of 2011 and the hockey season of 2012 was 9,138.13 hours, which represented a 12.4% reduction in overall hours worked by the employees. (*Id*. at ¶¶46-47, Exhs. 14 and 15)

When hockey season resumed, plaintiff returned to working substantially the same number of hours as she had during prior seasons. (*Id*. at ¶49) Specifically, from October 5, 2012 through November 2, 2012, plaintiff worked an average of 31.9 hours per week. (*Id*. at ¶¶41-42) As a comparison, from October 7, 2011 through November 4, 2011, plaintiff worked an average of 31.7 hours a week. (*Id*.)

On or around November 26, 2012, plaintiff filed a charge with the DOL alleging that she had been retaliated against for taking leave pursuant to the Family and Medical Leave Act. (Dkt. No 21-1, ¶15, Exh. 1) On December 14, 2012, plaintiff filed a charge with the EEOC alleging sex discrimination, retaliation, and violation of the Equal Pay Act. (*Id*. at ¶6, Exh. 1) Plaintiff claimed that she was discriminated against and paid lower wages because of her gender, and that her hours were reduced after she returned from medical leave. (*Id*.) She also alleged that after she filed the internal

10

complaint against Mr. Yarborough, she was transferred to the Guest Ambassador position which involved additional duties for less money.  (*Id*.)

On or around January 3, 2013, plaintiff received a warning for refusing a reasonable request by a guest.  (Dkt. No. 21-3, ¶53, Exh. 16)  The warning indicated that not only did plaintiff refuse a reasonable guest request, but she later became defensive and would not accept accountability for the incident when her supervisor attempted to correct her.  (*Id.*)  The warning was characterized as a "final warning" and stated that other infractions of this nature would result in disciplinary action up to and including termination.  (*Id*.)  On or around January 18, 2013, plaintiff received a written warning for a different incident during which she became argumentative when given a direction by her supervisor.  (*Id*. at ¶55, Exh. 17)

On January 31, 2013, plaintiff filed a second charge with the EEOC, alleging discrimination and retaliation, including the spreading of false rumors, exclusion from a meeting, and receipt of the final warning on January 3, 2013.  (Dkt. No. 21-1, ¶8, Exh. 2)  On September 5, 2013, plaintiff filed a third charge of discrimination alleging that Uniquest retaliated against her by denying her access to a computer program.  (*Id*. at ¶10, Exh. 3)  During her deposition, plaintiff explained that this computer program allowed employees to effectuate a "forced sell", which would change a guest's room rate.  (*Id*. at ¶21, Exh. 8, pg. 87)  Plaintiff indicated that she was the only person working the front guest who did not have the computer access to accomplish this, and that she often had to ask other employees to do this for her.  (*Id*.)  Plaintiff indicated that her inability to effectuate a forced sell was inconvenient and "annoyed the guests to

no end." (*Id*.)

In February of 2014 Uniquest eliminated the Guest Ambassador position. (Dkt.
No. 21-3, ¶56) However, plaintiff continued to work at Embassy Suites as a part-time
"comp" bartender. (*Id*.) On March 13, 2014, plaintiff requested a meeting with Masters.
(*Id*. at ¶57) Masters met with plaintiff and plaintiff indicated that she was disturbed by a
comment that James made about an employee who had recently been terminated. (*Id*.
at ¶58) Plaintiff stated that the comment was made by James to Jack Whiting,
Assistant Food and Beverage Manager. (*Id*.) Masters conducted an investigation. (*Id*.
at ¶¶60-63) Masters spoke to James, who denied making any statement that he
wanted to "hire his boys to put a cap" in a former employee's head. (*Id*. at ¶61)
Masters also interviewed Whiting, who denied that James made this statement to him.
(*Id*. at ¶62, Dkt. No. 21-5, ¶¶6-9) Another meeting was held with plaintiff on March 17,
2014 to discuss her allegations against James. (Dkt. No. 21-3, ¶64) Masters and
Susan Hassinger, Assistant Counsel for Uniland, were present, among others. (*Id*. at
¶64; Dkt. No. 21-6, ¶6) Ultimately, Masters was unable to substantiate any of plaintiff's
allegations, and Masters determined that plaintiff made a false accusation against
James. (Dkt. No. 21-3, ¶65) Masters concluded that plaintiff was difficult to manage,
had been argumentative and insubordinate during the meeting on March 17, 2014, and
had falsified an accusation against another employee. (*Id*. at ¶¶65-67) Based upon
this incident, as well as her overall assessment of plaintiff's disciplinary record, job
history and attitude, Masters recommended that plaintiff's employment be terminated.
(*Id*.; Exh. 20) Hassinger, who reviewed plaintiff's employment file and the results of

Master's investigation, came to the same conclusion and also recommended termination.  (Dkt. No. 21-6, ¶¶7-9, Exh. A)  Plaintiff was terminated on March 18, 2014.  (Dkt. No. 21-3, ¶71)

On April 1, 2014, plaintiff filed a fourth EEOC charge alleging sex discrimination and retaliation as related to her discharge from employment.  (Dkt. No. 21-1, ¶12, Exh. 4)  The EEOC issued right-to-sue letters as to all four of plaintiff's charges on August 19, 2014.  (*Id*. at ¶14, Exh. 5)

During her deposition, plaintiff could not recall any supervisors at Uniquest making any statement or comment that she believed to be discriminatory based on gender.  (*Id*. at ¶49, Exh. 8, pg 177)

## DISCUSSION

### *Summary Judgment Standard*

Pursuant to Federal Rule of Civil Procedure 56, summary judgment is to be granted where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  *See* Fed.R.Civ.P. 56.  A genuine issue of material fact exists "where the evidence is such that a reasonable jury could decide in the non-movant's favor."  *Beyer v. Cty. of Nassau*, 524 F.3d 160, 163 (2d Cir. 2008).  "[V]iewing the evidence produced in the light most favorable to the nonmovant, if a rational trier [of fact] could not find for the nonmovant, then there is no genuine issue of material fact and entry of summary judgment is appropriate."  *Bay v. Times Mirror Magazine, Inc*., 936 F.2d 112, 116 (2d Cir. 1991).  When a movant has met this burden, the burden shifts to the non-movant to bring forth evidence establishing the existence of

an issue of material fact.  *Linares v. McLaughlin*, 423 Fed. Appx. 84, 86 (2d Cir. 2011).

In evaluating a motion for summary judgment, a court must resolve all ambiguities and

draw all reasonable inferences in favor of the nonmoving party, and it is the burden of

the moving party to demonstrate the absence of any material facts genuinely in dispute.

*Hathaway v. Coughlin*, 841 F.2d 48, 50 (2d Cir. 1988).

> ### Equal Pay Act

In order to succeed on a claim pursuant to the Equal Pay Act ("EPA"), a plaintiff

must show that: (1) the employer pays different wages to employees of the opposite

sex; (2) the employees perform equal work on jobs requiring equal skill, effort and

responsibility; and (3) the jobs are performed under similar working conditions.  *Lavin-*

*McEleney v. Marist Coll.*, 239 F.3d 476, 480 (2d Cir. 2001).  The burden then shifts to

the employer to demonstrate that wage disparities are due to a seniority system, a merit

system, a system that measures earnings based upon quantity or quality of production,

or other differentials based on any factor other than sex, provided it was implemented

for a legitimate business reason.  *Forden v. Bristol Myers Squibb*, 63 Fed. Appx. 14 (2d

Cir. 2003).  To establish the "factor other than sex" defense, the employer must show

that it had a legitimate business reason for implementing the gender-neutral factor that

brought about the wage differential.  *Id*.  If the employer meets its burden of persuasion

in establishing that a factor other than sex was the reason for the wage differential,

plaintiff may counter by producing evidence that defendants stated reasons are actually

a pretext for sex discrimination.  *Id*.  "The appropriate inquiry to determine if the factor

put forward is a pretext, is whether the employer used the factor reasonably in light of

14

the employer's stated purpose as well as its other practices." *Aldrich v. Randolph Cent. Sch. Dist.*, 963 F.2d 520, 526 (2d Cir. 1992). Notably, the Second Circuit has held that defendants face a heavy burden in establishing the "factor other than sex" defense and that, unlike a Title VII case, a plaintiff does not have to show discriminatory intent to prevail. *Jamilik v. Yale Univ.*, 362 Fed. Appx. 148, 149 (2d Cir 2009); *Belfi v. Pendergast*, 191 F.3d 129, 135 (2d Cir. 1999).

During the time that plaintiff worked as a Guest Services Agent there were a number of other employees, including three males, who also worked as Guest Services Agents and performed the exact same job as plaintiff under the same working conditions. All three male Guest Services Agents earned $10.00 per hour, while plaintiff earned $9.00 per hour. This is sufficient to establish a *prima facie* case under the EPA. Uniquest asserts that the difference between plaintiff's wage and the male employees' wages was based on factors other than sex, namely the male employees' educational background and prior experience in hospitality. The Second Circuit recognizes that a pay differential based on differences in experience constitutes a legitimate business reason. *Holt v. KMI-Continental, Inc.*, 95 F.3d 123 (2d Cir. 1995). However, when an employer claims that a wage differential is based on experience, the employer bears the burden to demonstrate that the "experience is a job-related qualification for the position in question" and that the employer "based the higher salary on this factor." *Tomka v. Seiler Corp.*, 66 F.3d 1295, 1312 (2d Cir. 1995).

Taking this standard into account, there is a question of fact as to whether education and hospitality experience were truly job-related qualifications for Guest

Services Agents and whether Uniquest consistently based wage determinations on these factors.  Two male Guest Services Agents paid more than plaintiff had no hospitality experience; one of these individuals had a college degree in English and the other had taken some college courses in hospitality but did not graduate.  Uniquest offers no explanation as to why a male Guest Services Agent with no hospitality experience and a degree in an unrelated field was paid more than plaintiff, who had no college but some hospitality experience, albeit only six months.  Further, defendants assert that only one other female Guest Services Agent, Nicole Mead, was paid $9.00 per hour, and that was due to her lack of experience.  This assertion is belied by the record.  Another woman, Rahkeda Brown, was also hired at $9.00 an hour and had a year and a half of hospitality experience.  Nicole Mead, who Uniquest asserts was paid $9.00 per hour because she, like plaintiff, lacked experience, had four months of hospitality experience and a college degree in hospitality.  In contrast, two of the male Guest Services Agents making $1.00 per hour more had no hospitality experience at all.

In sum, without more information as to how the qualifications cited by Uniquest were specifically considered and an explanation as to why some men with no hospitality experience were paid more than women with either hospitality experience or both hospitality experience and some relevant education, Uniquest has not conclusively established its affirmative defense.  *See Shieldkret v. Park Place Entertainment Corp*., 2002 U.S. Dist. LEXIS 1032 (SDNY 2002) (genuine issue of material fact existed on EPA claim as to the full extent of the employees' relevant past experience and the role it played in the defendants' determination of their salaries); *Sandor v. Safe Horizon,*

16

*Inc.*, 2011 U.S. Dist. LEXIS 3346 (EDNY 2011) (defendant could not obtain summary judgment without conclusively establishing that the male employee's work experience was the reason he was paid a higher salary than plaintiff or other female employees in the same position).

Uniquest also argues that with respect to the time plaintiff spent working as a Guest Ambassador, there are no male comparators which would establish a pay differential sufficient to support an EPA claim. In order to establish that male colleagues have similar jobs for purposes of an EPA claim, a plaintiff does not have to show that the respective jobs are identical, but instead that the jobs are "substantially equal" with respect to skill, effort, responsibility and working conditions. *Lavin-McEleney,* 239 F.3d at 480; *accord* 29 C.F.R. §1620.13(e). Factors to be considered in determining whether a male comparator's position is substantially equivalent include whether the plaintiff and the comparator work in the same division or department, whether they have the same supervisor, whether they have similar responsibilities, and whether they are required to devote the same effort. *Husser v. New York City Dept. Of Education*, 137 F. Supp. 253 (EDNY 2015)*; Tomka v. Seiler*, 66 F.3d 1295, 1310 (2d Cir. 1995); ("[T]he standard under the Equal Pay Act is job content and not job title or description.")

The Court finds an issue of fact as to whether the position of Guest Services Agent and Guest Ambassador are substantially equal for purposes of the EPA. In an attempt to distinguish the Guest Ambassador position from the Guest Services Agent position, Uniquest asserts that the Guest Ambassador position was part of the Food

and Beverage Department.  Uniquest also offers a job description of a Food and Beverage Server as indicative of plaintiff's duties and responsibilities as a Guest Ambassador.  However, plaintiff testified that, to her knowledge, the Guest Ambassador position was not part of the Food and Beverage Department and that she never worked as a Food and Beverage Server.  Uniquest admits that as Guest Ambassador, plaintiff spent at least three hours of each shift performing the work of a Guest Services Agent. Plaintiff testified that she would often cover the front desk for Guest Services Agents from noon until 4:00 p.m., which is approximately half of her shift, and then assist the Manager's Reception.  Thus, the record reflects that as Guest Ambassador, plaintiff spent at least three to four hours of each shift performing the exact same work as a Guest Services Agent.  In addition, not only did plaintiff spend substantial time performing the same duties as a Guest Services Agent, but there is also evidence in the record that the remainder of the work plaintiff performed as a Guest Ambassador was extremely similar to that of a Guest Services Agent.  Plaintiff testified that when she worked as a Guest Ambassador at the Manager's Reception she would greet guests attending the reception, make reservations, act as concierge and work to solve guest problems or complaints by serving as a liaison to the front desk.  The job description for Guest Services Agent summarizes the position requirements as greeting and registering guests, providing prompt and courteous service, and resolving guest challenges during their stay.  (Dkt. No. 21-3, ¶12, Exh. 4)  Both jobs appear to be customer service positions which focus on attending to various needs of guests. The jobs seem to encompass the same types of duties and responsibilities, and to require similar levels of skill and effort.  Thus, the Court cannot find, as a matter of law, that

Guest Services Agent and a Guest Ambassador are not substantially equal positions for purposes of an EPA claim. *See Lavin-McEleney*, 239 F.3d at 480 (the question of whether two positions are equivalent is generally a factual issue for the jury). For these reasons, it is recommended that Uniquest's motion for summary judgment as to plaintiff's EPA claim be denied.[2]

### Retaliation: Title VII and NYSHRL

Title VII of the Civil Rights Act of 1964 ("Title VII") prohibits an employer from "discriminating against any of [its] employees...because he [or she] has made a charge, testified, assisted, or participated in any manner in a [Title VII] investigation, proceeding or hearing." 42 U.S.C. §2000e-3(a). In order to demonstrate a *prima facie* case of retaliation, the plaintiff must show that: (1) she engaged in protected activity; (2) the employer was aware of the protected activity; (3) the employer took adverse action; and (4) a causal connection exists between the protected activity and the adverse action. *Jute v. Hamilton Sundstrand Corp.*, 420 F.3d 166, 173 (2d Cir. 2005). Once a *prima facie* case is established, the burden then shifts to the employer to demonstrate a legitimate, non-retaliatory basis for the adverse action. *Chen v. City University of N.Y.*, 805 F.3d 59 (2d Cir. 2015). If such an explanation is provided, "the presumption of retaliation dissipates", and the plaintiff must show "that the desire to retaliate was the but-for cause of the challenged employment action." *Univ. Of Tex. Sw. Med. Ctr. v.*

---

[2] The Court agrees with defendants that the record lacks any evidence that plaintiff's positions as Guest Services Agent and Guest Ambassadors were substantially equal to those of bartender. In addition, there is no evidence in the record of plaintiff's earnings as a part-time "comp" bartender and how those compared to men in the same position. Thus, her EPA claim reaches from her date of hire through the elimination of her Guest Ambassador position.

*Nassar*, 133 S. Ct. 2517 (2013).  This same burden shifting framework also covers

retaliation claims asserted pursuant to the New York State Human Rights Law

("NYSHRL").  *Summa v. Hofstra Univ.*, 708 F.3d 115, 125 (2d Cir. 2013).

Here, plaintiff engaged in protected activity, which defendants were aware of,

when she filed EEOC charges in December 2012, January 2013, September 2013, and

April 2014.  Plaintiff also alleges that prior to filing her EEOC charges, she filed an

internal discrimination complaint in June of 2011.  Defendants argue that the internal

complaint does not constitute protected activity since plaintiff did not complain about

behavior prohibited by Title VII.  However, the Court does not have to reach this issue.

Assuming, *arguendo*, that both plaintiff's internal complaint and her EEOC charges

constituted protected activity, the majority of her retaliation claims fail for the reasons

outlined below.  The single aspect of her retaliation claim which survives is premised

upon retaliatory conduct following her third EEOC charge.

Plaintiff alleges that after filing charges with the EEOC defendants subjected her

to a false rumor that she rifled through a manager's desk, excluded her from a meeting,

denied her the ability to change a room-rate while working the front desk, and told co-

workers not to communicate with her.     An employment action is adverse in the

retaliation context if it is so "materially adverse" that it would "dissuade a reasonable

worker from making or supporting a charge of discrimination."  *Burlington N. and Santa

Fe Ry. Co. v. White*, 548 U.S. 53, 57 (2006).  Plaintiff's inability to change a room-rate,

which she described in her deposition as "annoying", would not dissuade a reasonable

person from making a complaint of discrimination.  In addition, plaintiff's allegations that

20

she had a false rumor spread about her, that she was excluded from a meeting and that other employees were told not to speak to her are the types of "petty slights" and "minor annoyances" that do not normally constitute adverse employment actions for purposes of a retaliation claim. *Burlington*, 548 U.S. at 67-68 (the anti-retaliation law "protects an individual not from all retaliation, but from retaliation that produces an injury or harm"). *See also McWhite v. New York City Housing Auth.*, 2008 U.S. Dist. LEXIS 29145 (EDNY 2008) (holding that allegations that a supervisor ordered employees not to speak with plaintiff is a type of "minor annoyance" that would not deter a reasonable person from filing a charge of discrimination); *Mabry v. Neighborhood Defender Serv.*, 769 F. Supp. 2d 381, 399 (SDNY 2011) ("Plaintiff's allegation that he was excluded from management meetings, when considered in context, does not constitute an adverse employment action.")

Plaintiff also alleges that after filing her internal complaint she was moved to the Guest Ambassador position, which required additional duties for the same amount of pay.[3]  Internal transfers may represent adverse employment actions for purposes of a retaliation claim if the transfer constitutes a demotion or loss of prestige, results in material changes in terms, conditions or benefits of employment, or would otherwise

---

[3]  Defendants argue that any allegations of discrimination or retaliation which occurred before February 18, 2012 are time-barred, since plaintiff's first EEOC charge was filed on December 14, 2012. *See* 42 U.S.C. §2000e-5(e)(1) (Title VII requires that victims of discrimination file an administrative charge within 300 days "after the alleged unlawful employment practice occurred.") Even though plaintiff was transferred to the Guest Ambassador position on November 2, 2011, plaintiff alleges that the transfer resulted in an overall increase in duties and responsibilities.  This suggests an ongoing practice that extended beyond the date of transfer and occurred during the relevant time period.  *See Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72 (2d Cir. 2015) ("to the extent that [plaintiff] alleges he was given a disproportionate amount of work on a discriminatory or retaliatory basis after the relevant dates, the claims are not time barred").

dissuade a reasonable person from making a claim of discrimination.  *See Kessler v. Westchester County Dep't of Soc. Servs.*, 461 F.3d 199 (2d Cir. 2006).  In addition, an increase in workload "may be adverse for the purposes of filing a retaliation claim if the increase is heavily disproportionate to those similarly situated."  *Paul v. Postgraduate Center for Mental Health*, 97 F. Supp. 3d 141, 196 (EDNY 2015).  Here, plaintiff's transfer to the Guest Ambassador position resulted in no loss of compensation or benefits.  In fact, plaintiff received a raise a few months after she was transferred.  Likewise, there is no evidence in the record to suggest that the transfer was a demotion, constituted a loss of prestige, or resulted in a heavily disproportionate workload for plaintiff.  In fact, the record reflects that the Guest Ambassador position was extremely similar in nature to the position of Guest Services Agent, did not involve a material increase in job responsibilities, and did not result in duties any more or less onerous than those of a Guest Services Agent.  Plaintiff's own deposition testimony indicates that she spent approximately three to four hours per shift performing the same duties as a Guest Services Agent and a separate three to four hours per shift performing other, similar hospitality and customer service functions.  For these reasons, the transfer to a Guest Ambassador position does not constitute an adverse employment action.

Further, even if plaintiff were able to demonstrate that the transfer to the Guest Ambassador position was an adverse action and that an inference of retaliation existed, this claim should still be dismissed because Uniquest had a legitimate, non-retaliatory reason for transferring plaintiff to the Guest Ambassador position.  Defendants

submitted documentary evidence that shortly after plaintiff was hired as a Guest

Services Agent she received written warnings for incorrect cash handling procedures,

failing to properly check guests in and out of rooms, failing to complete a morning

checklist and failing to provide a guest amenity.  The uncontested record reflects that

defendants moved plaintiff to the Guest Ambassador position because of her difficulties

as a Guest Services Agent, and the Guest Ambassador position involved less time

performing front desk duties.  Plaintiff has offered no evidence, aside from conclusory

statements in her complaint, disputing the stated reason for the transfer or suggesting

that the stated reason was a pretext for retaliation.  *See Van Zant v. KLM Royal Dutch

Airlines,* 80 F.3d 708, 714 (2d Cir. 1996) (to prove pretext, a plaintiff must produce "not

simply some evidence, but sufficient evidence to support a rational finding that the

legitimate, non-discriminatory reasons proffered by the employer were false, and that

more likely than not discrimination was the real reason" for the action); *Sanderson v.

New York State Electric & Gas Corp.*, 560 Fed. Appx. 88 (2d Cir. 2014) (affirming

district court's granting of summary judgment on retaliation claim, where plaintiff offered

no evidence that the employer's reliance on her insubordination as a reason for her

discharge was a pretext for retaliation).

Plaintiff also claims she was retaliated against when given a final warning on

January 3, 2013.[4]  Courts in this Circuit have held that "reprimands, threats of

disciplinary actions and excessive scrutiny do not constitute adverse employment

actions in the absence of other negative results such as decrease in pay or being

---

[4]  The disciplinary warnings that plaintiff received in June and September of 2011 are time- barred since they occurred over 300 days before plaintiff filed her initial EEOC charge on December 14, 2012.

placed on probation." *Uddin v. City of New York*, 427 F. Supp. 2d 414 (SDNY 2006). However, reprimands or written warning which could lead to more serious disciplinary action may, depending on the circumstances, constitute adverse employment actions. *Wilson v. Grand Central Partnership, Inc.*, 2004 U.S. Dist. LEXIS 11051 (SDNY 2004). In *Wilson*, the Southern District of New York found an issue of fact as to whether disciplinary warnings constituted adverse employment actions, since one counseling memo placed plaintiff on notice that he may be subject to "more severe penalties" and the second memo suggested that a subsequent incident could result in more serious discipline. *Id*. Similarly here, the final warning that plaintiff received on January 3, 2013 indicated that any more infractions would result in additional discipline, up to and including termination. Considering the facts in the light most favorable to plaintiff, this language creates an issue of fact as to whether the final warning constituted an adverse employment action. As to the fourth requirement of a *prima facie* case of retaliation, plaintiff has established a causal connection indirectly by showing that her protected activity, the EEOC charge on December 14, 2012, was closely followed by the final warning on January 3, 2013. *See Treglia v. Town of Manilus*, 313 F.3d 713, 721 (2d Cir. 2002) (temporal proximity of one month between protected activity and adverse employment action "is sufficient to establish the required causal link for a *prima facie* case"). Thus, plaintiff has established a *prima facie* case of retaliation with respect to the January 3, 2013 discipline.

However, Uniquest has offered a legitimate, non-discriminatory reason for the January 3, 2013 discipline. Specifically, Uniquest has submitted affidavits and

documentary evidence demonstrating that plaintiff violated company policy when she refused the reasonable request of a guest and then refused to accept responsibility for the incident when a supervisor attempted to speak with her about it. Plaintiff, who has put forth no admissible evidence in opposition, fails to demonstrate that the proffered reasons for her discipline were pretextual. In fact, during her deposition plaintiff did not dispute that the incident occurred, but rather argued that the discipline was undeserved. (Dkt. No. 21-1, Exh. 8, pg. 83) This is insufficient to create a material issue of fact as to whether defendants' legitimate non-discriminatory reason for the discipline was a pretext for retaliation. *See Wolf v. Time Warner, Inc.,* 2012 U.S. Dist. LEXIS 136436 (SDNY 2012) (plaintiff's disagreement as to the substance of the complaints against her does not create a material issue of fact since plaintiff did not present any evidence, aside from her own subjective disagreement, to show that the complaints were unfounded or misdirected so as to indicate pretext); *Scaria v. Rubin*, 117 F.3d 652, 654-55 (2d Cir. 1997) (the court "does not sit as a super-personnel department to review employers' decisions").

Plaintiff's complaint alleges that at the end of 2013, after she filed her second and third EEOC charges on January 31, 2013 and September 5, 2013 respectively, she was informed that her position as Guest Ambassador was to be eliminated. (Dkt. No. 1, pg. 4) Plaintiff alleges that she inquired as to the Guest Services Agent position, but was told that there were no openings. *Id*. Plaintiff further alleges that a job advertisement for the same position appeared on the internet less than one week later. *Id*. Plaintiff's claim that her position as Guest Ambassador was eliminated in retaliation

for her EEOC charges is not addressed in defendants' summary judgment motion.

When the Court inquired as to this aspect of plaintiff's retaliation claim during oral

argument, defendants argued that plaintiff had not raised this claim in either her

complaint or in any of her EEOC charges.  The Court finds that the language in the

complaint is sufficient to state a claim for retaliation based upon the elimination of her

Guest Ambassador position.  However, defendants are correct that plaintiff does not

specifically allege retaliation based upon the elimination of her Guest Ambassador

position in any of her EEOC charges.

In a federal lawsuit, a plaintiff may assert "only those claims that either were

included or are reasonably related to the allegations contained in her EEOC charge."

*Holtz v. Rockefeller & Co., Inc*., 258 F.3d 62, 83 (2d Cir. 2001).  Reasonably related

claims include: (1) claims which "would fall within the scope of the EEOC investigation

which can reasonably be expected to grow out of the charge"; (2) claims "alleging

retaliation by an employer against an employee for filing an EEOC charge"; and (3)

claims alleging "further incidents of discrimination carried out in precisely the same

manner alleged in the EEOC charge."  *Butts v. City of N.Y. Dep't of Hous. Pres. and*

*Dev*., 990 F.2d 1397, 1402-1403 (2d Cir. 1993).  Here, plaintiff's claim regarding the

elimination of her Guest Ambassador position is reasonably related to her EEOC

charges because it is an allegation of retaliation based upon the filing of her second

and third EEOC charges.  *See Butts*, 990 F.2d at 1402 (holding that a claim of

retaliation based on termination which occurred after the filing of an EEOC charge was

reasonably related to the discrimination claims raised in the charge).  In addition,

because plaintiff's four EEOC charges allege retaliation in a myriad of different ways by

Uniquest throughout the course of plaintiff's employment, the Court finds that an investigation as to why her Guest Ambassador position was eliminated would likely "fall within the scope of the EEOC investigation which can reasonably be expected to grow" out of the charges that have been made. *See Fitzgerald v. Henderson*, 251 F.3d 345, 359-60; *see also Rose v. New York City Bd. Of Educ*., 257 F.3d 156, 163 (a complaint of retaliation "could reasonably be expected to inquire into other instances of alleged [retaliation] by the same actor").

For these reasons, the Court finds that plaintiff has pled a claim of retaliation based upon the elimination of her Guest Ambassador position and that she has not failed to exhaust her administrative remedies. However, because neither party has sufficiently addressed the merits of this claim, the Court recommends that the claim proceed without prejudice to Uniquest's right to conduct limited discovery and file a renewed motion for summary judgment as to this claim only.

After plaintiff's position as Guest Ambassador was eliminated, plaintiff began working as a part-time "comp" bartender at the Embassy Suites. Plaintiff claims that she was terminated from this position on March 18, 2014 in retaliation for her various complaints of discrimination. Plaintiff's termination constitutes an adverse employment action. However, plaintiff is unable to establish a causal connection between her termination and protected activity. Plaintiff has offered no direct or circumstantial evidence of retaliatory animus. In addition, plaintiff filed her third EEOC charge on September 5, 2013, and she was not terminated until over six months later.[5] This time

---

[5]  Plaintiff's September 2013 EEOC charge was the closest, prior protected activity to her termination on March 18, 2013.

frame is insufficient to suggest a causal connection between plaintiff's EEOC charge and her termination. *See Dechberry v. New York City Fire Dept.*, 124 F. Supp. 3d 131 (EDNY 2015) (six month gap between plaintiff's EEOC charge and alleged adverse actions was "too temporally attenuated to infer a connection"). Thus, plaintiff is unable to establish a *prima facie* case of retaliatory termination.

Moreover, even if plaintiff could establish a *prima facie* case of retaliatory termination, defendants have established a legitimate, non-discriminatory reason for their actions. Uniquest offers substantial evidence, in the form of affidavits and documents, indicating that plaintiff accused another employee of making a violent statement, an investigation was conducted, and it was ultimately concluded that plaintiff made a false accusation. In addition, Masters, who is in charge of Human Resources for Uniland, and Hassinger, an attorney for Uniland, both found plaintiff to be argumentative and difficult during the course of the investigation and both recommended that plaintiff be terminated. Plaintiff puts forth no evidence to rebut the sworn statements and documentary evidence submitted by defendants in support of the termination, and there are no facts in the record which would indicate pretext. *See Ferraro v. Kellwood Co.*, 440 F.3d 96, 100 (2d Cir. 2006) (affirming grant of summary judgment in discrimination case where plaintiff's claim of pretext was unsupported by any evidence other than her own speculation).

For these reasons, it is recommended that defendants' motion for summary judgment as to plaintiff's retaliation claims pursuant to Title VII and the NYSHRL be denied, with the exception of her claim based upon the elimination of the Guest Ambassador position.

*Gender Discrimination: Title VII and NYSHRL*

To establish a *prima facie* claim of gender discrimination under Title VII, a plaintiff must demonstrate: (1) membership in a protected class; (2) satisfactory job performance; (3) an adverse employment action; and (4) circumstances surrounding the employment action that give rise to an inference of discrimination. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-05 (1973). If the plaintiff succeeds in establishing a *prima facie* case, the burden shifts to the employer to demonstrate a legitimate, non-discriminatory reason for its actions. *Ruiz v. Cnty. of Rockland*, 609 F.3d 486, 491-92 (2d. Cir. 2010). If the employer meets this burden, the burden then shifts back to the employee to show that the proffered reason was pretextual. *McDonnell Douglas*, 411 U.S. at 405-05. In order to defeat summary judgment on a Title VII gender discrimination claim, "the plaintiff's admissible evidence must show circumstances that would permit a rational finder of fact to infer that the defendant's employment decision was more likely than not based in whole or in part on discrimination." *Sterns v. Trs. of Columbia Univ.*, 131 F.3d 305, 312 (2d Cir. 1997). Plaintiff's claims of gender discrimination pursuant to the NYSHRL are analyzed under the same analytical framework. *Rojas v. The Roman Catholic Diocese of Rochester*, 660 F.3d 98, 107, n. 10 (2d Cir. 2011).

Unlike the more inclusive standard for an adverse employment action in the retaliation context, an adverse employment action in a gender discrimination case must constitute "a materially adverse change in the terms and conditions of employment." *Sanders v. NYC Human Res. Admin.*, 361 F.3d 749, 755 (2d Cir. 2004). Adverse employment actions that courts have deemed sufficient in a gender discrimination

context include, "termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices unique to a particular situation" which affect the terms and conditions of employment. *Beyer v. Cty. of Nassau*, 534 F.3d 160, 163 (2d Cir. 2008). Plaintiff's complaint, while not a model of clarity, appears to allege she was discriminated against on the basis of gender when she was forced to use a script when answering the telephone and restricted from changing room-rates. These allegations simply do not rise to the level of actionable adverse employment actions. *See Joseph v. Leavitt*, 465 F.3d 87, 90 (2d Cir. 2006) (an adverse employment action must be "more disruptive than a mere inconvenience or alteration of job responsibilities").

Plaintiff further alleges that she was discriminated against by Mr. Yarborough, her direct supervisor, in that he refused to train her and would not answer her questions. Plaintiff also alleges that she was "not given training like her coworkers." "Inadequate training may comprise an adverse employment action but only in circumstances where an employer denied necessary job training to an employee and the terms and conditions of his employment are thereby harmed." *Carpentar v. City of Mount Vernon*, 2016 U.S. Dist LEXIS 98770 (SDNY 2016). Here, plaintiff fails to offer any examples of specific training that she was denied. She does not allege any lost advancement opportunities due to a denial of training. When asked about this claim during her deposition, plaintiff stated only that Mr. Yarborough refused to train her at the front desk and refused to answer her questions. These general statements, which are unsupported by any admissible evidence and which fail to name any actual harm

suffered by plaintiff, are simply insufficient to establish an adverse employment action. *See Hadman v. Sebelius*, 2011 U.S. Dist. LEXIS 115860 (EDNY 2011) ("Denial of training, without a showing of some injury therefrom, cannot alone constitute an adverse employment action.")

Moreover, even if plaintiff were able to demonstrate that the denial of training constituted an adverse employment action, her claim still fails because plaintiff cannot show that the denial occurred under circumstances giving rise to an inference of discrimination. The record is bereft of any evidence that would tend to show that plaintiff was denied training on account of her gender. In fact, plaintiff alleges only that she was not given training "like her co-workers", who were both men and women. *See City of Los Angeles, Dep't of Water and Power v. Manhart*, 435 U.S. 702 (1993) (internal citations omitted) (Title VII's "simple test" for unlawful discrimination is "whether the evidence shows treatment of a person in a manner which but for that person's sex would be different").

To the extent that plaintiff claims her transfer to the Guest Ambassador position, the final warning she received on January 3, 2013, elimination of the Guest Ambassador position or her termination were the result of gender discrimination, those claims should also be dismissed. Plaintiff has failed to submit any evidence that these actions occurred under circumstances giving rise to an inference of discrimination. An inference of discrimination can be drawn from circumstances such as "the employer's criticism of the plaintiff's performance in...degrading terms; or its invidious comments about others in the protected group; or the more favorable treatment of employees not in the protected group; or the sequence of events leading to the...adverse employment

action." *Abdu-Brisson v. Delta Air Lines, Inc.*, 239 F.3d 456, 468 (2d Cir. 2001). Plaintiff's complaint contains no allegations of discriminatory remarks or comments, either about plaintiff or women in general.  Indeed, plaintiff admitted in her deposition that she could not recall any supervisors at Uniquest making any statement or comment that she believed to be discriminatory based on gender.  While plaintiff makes a conclusory statement in her complaint that she was disciplined for things that male employees were not, plaintiff has not come forth with an example of any similarly situated male employee who was not disciplined for the same conduct, or even treated more favorably in general.  In addition, the uncontested evidence submitted by Uniquest indicates that it was Masters and Hassinger, two female employees, who were primarily involved in the decision to terminate plaintiff.  Although the fact that plaintiff and the alleged discriminatory actor are members of the same protected class does not preclude a discrimination claim, generally "courts draw an inference against discrimination where the person taking the adverse action is in the same protected class as the affected employee." *Benedith v. Malverne Union Free School Dist.*, 38 F. Supp. 3d 286, 319 (EDNY 2014); *Connell v. Consol. Edison Co. Of N.Y., Inc.*, 109 F. Supp. 2d 202, 209 (SDNY 2000) (no inference of discriminatory intent where decision-makers are in same protected class as plaintiff).

Moreover, as explained in detail above, Uniquest has submitted substantial, uncontested evidence of its legitimate non-discriminatory reasons for the transfer to the Guest Ambassador position, the January 3, 2013 discipline, and plaintiff's termination. In response, plaintiff any failed to offer any evidence that these reasons were a pretext for gender discrimination.  *See Ferraro v. Kellwood Co.*, 440 F.3d 96, 100 (2d Cir.

2006) (affirming grant of summary judgment in discrimination case where plaintiff's claim of pretext was unsupported by any evidence other than her own speculation).

Finally, plaintiff claims that she was paid less than male employees on account of her gender.  An equal pay claim pursuant to Title VII is analyzed under the same standards as an EPA claim, except that, in addition to establishing the elements of an EPA claim, a plaintiff must produce evidence of discriminatory animus.  *See Belfi v. Prendergast*, 191 F.3d 129, 139 (2d Cir. 1999) (denying an employer's summary judgment motion on an EPA claim but granting summary judgment as to the employee's same claims under Title VII because no discriminatory intent was shown).  Here, as explained above, plaintiff has made an EPA claim sufficient to withstand summary judgment.  However, plaintiff's wage claim under Title VII should be dismissed because she has not produced any evidence of discriminatory animus.  In *Belfi*, the Second Circuit explained that while a plaintiff may rely on the inconsistent and pretextual nature of the employer's explanation for the wage disparity in establishing an EPA claim, those same inconsistencies did not constitute proof that the employer intended to pay plaintiff less because she is a woman.  *Id*.  The *Belfi* Court further explained that in order to establish a Title VII unequal pay claim, "it must also be shown not only that the reason offered [for the wage difference] was false, but that the real reason was discrimination."  *Id*.  Here, while there is an issue of fact as to the consistent application of Uniquest's reasons for the pay disparity, plaintiff has offered no evidence that the real reason she was paid less than male employees was due to her gender.  In fact, the record reflects that while two other female Guest Services Agents were paid the same as plaintiff, at least one female Guest Services Agent was paid the same as

the three male comparators cited by plaintiff.  *See McGuinness v. Lincoln Hall*, 263

F.3d 49 (2d Cir. 2001) (*prima facie* case established based on similarly situated

comparator, but gender claim still dismissed because plaintiff failed to meet ultimate

burden of showing animus).

For these reasons, it is recommended that plaintiff's discrimination claims

pursuant to Title VII and the NYSHRL be dismissed.

*Family and Medical Leave Act*

Retaliation claims brought pursuant to the Family and Medical Leave Act

("FMLA") are analyzed under the same burden-shifting test set forth in *McDonnell*

*Douglas*.  *See Potenza v. City of New York*, 365 F.3d 165 (2d Cir. 2004).[6]  To establish

a *prima facie* case of FMLA retaliation, a plaintiff must demonstrate that: (1) she

exercised her rights under the FMLA; (2) she was qualified for her position; (3) she

suffered an adverse employment action; and (4) the adverse employment action

occurred under circumstances giving rise to an inference of discrimination.  *Graziadio v.*

*Culinary Institute of America*, 817 F.3d 415 (2d Cir. 2016).   If a plaintiff sets forth a

*prima facie* case, the defendant must demonstrate a legitimate, non-discriminatory

reason for its actions.  *Id*.  If a legitimate non-discriminatory reason is offered, plaintiff

must then show that defendant's proffered explanation is pretextual.  *Id*.

Here, the record indicates that plaintiff requested, was granted and took FMLA

---

[6]  Defendants argue that because plaintiff's response to their summary judgment motion fails to mention either her FMLA claim or her individual claims against defendant James, plaintiff has "abandoned those claims."  However, "the failure to respond to a motion for summary judgment alone does not justify the granting of summary judgment."  *Vermont Teddy Bear Co., Inc. V. 1-800 Beargram Co.*, 373 F.3d 241, 244 (2d Cir. 2004)  Instead, "the district court must still assess whether the moving party has fulfilled its burden of demonstrating that there is no genuine issue of material fact and its entitlement to judgment as a matter of law."  *Id*. at 244.

leave from June 25, 2012 through September 9, 2012.  Plaintiff alleges that defendants retaliated against her for taking FMLA leave by "reducing her hours, refusing her return to work, and giving her additional work duties without any additional pay."  Plaintiff claims she was not returned to work for two weeks after she was able to return to work, and that "her hours were almost cut in half."  Much like the rest of her claims, plaintiff has not submitted or cited any evidence in support of these allegations.

A number of the retaliatory acts alleged by plaintiff find no support in the record. To begin, defendants offer undisputed evidence that after receiving clearance to return to work on September 9, 2012, plaintiff was placed immediately on the schedule two days later.  As explained in detail above, plaintiff has offered no evidence that her transfer to the Guest Ambassador position involved an increase in duties.  With respect to her claim that her hours were cut in half, uncontested evidence submitted by Uniquest demonstrates that Plaintiff averaged substantially the same hours per week October 7, 2011 through November 4, 2011, the year she did not take FMLA leave, as she did October 5, 2012 through November 2, 2012, upon returning from FMLA leave. Specifically she averaged 31.9 hours a week during this time in 2012 and 31.7 hours a week during this time in 2011.

In addition, defendants have set forth legitimate, non-retaliatory reasons for any overall decrease in plaintiff's hours between the time period of September 1, 2011 through December 31, 2011 and September 1, 2012 through December 31, 2012. Uncontested evidence in the record demonstrates that during the fall and winter of 2012, when plaintiff returned from FMLA leave, business at the Embassy Suites was substantially down as a result of the NHL lock-out.  Employee hours were reduced

35

overall because of the loss in revenue.  Plaintiff offers no admissible evidence which would demonstrate that this reason was a pretext, nor does she point to any facts in the record which would support a finding of discriminatory animus.  For these reasons, it is recommended that plaintiff's FMLA retaliation claims be dismissed.

### Defendant Terence James

At the time of the allegations, James was employed by Uniquest as Assistant General Manager/Human Resources.  For the following reasons, it is recommended that all claims against James be dismissed.[7]

There is no individual liability under Title VII.  *Garibaldi v. Anixter, Inc*., 407 F. Supp. 2d 449, 451 (WDNY 2006).  Thus, any individual claim against James under Title VII cannot succeed.  The FMLA allows for individual liability in some instances, if a defendant controlled, in whole or in part, plaintiff's FMLA rights.  *Smith v. Westchester County*, 769 F. Supp. 448, 475 (SDNY 2011).  Specifically, the Second Circuit instructed that in determining whether to impose individual liability under the FMLA, courts should consider whether the defendant: "(1) had the power to hire and fire employees, (2) supervised and controlled employee work schedules or conditions of employment, (3) determined the rate and method of payment, and (4) maintained employment records."  *Herman v. RSR Sec. Servs., Ltd*., 172 F.3d 132, 139 (2d Cir. 1999).  There are no allegations in the complaint, and likewise no evidence in the record, that James had the power to hire and fire, supervised employees or controlled

---

[7]  Plaintiff's NYSHRL claim names defendant James specifically.  Her Title VII and EPA claims refer to "defendants".  In her FMLA claim, plaintiff uses the term "defendant" but does not specify as to which defendant she is referring to.  Since it is not entirely clear who plaintiff intends to name under each statute, the Court has analyzed all claims as to both defendants.

work schedules, determined pay, maintained records, or had any control over plaintiff's FMLA leave.  Thus, there is no basis on which to impose individual liability under the FMLA.

"Although the Second Circuit has not addressed whether the Equal Pay Act provides for individual liability, at least one district court in this Circuit held that it does." *Fayson v. Kaleida Health, Inc.*, 2002 LEXIS 18591 (WDNY 2002); *accord Bonner v. Guccione*, 1997 U.S. Dist. LEXIS 9275 (SDNY 1997).  The *Bonner* Court noted that in determining individual liability, "courts examine the economic realities of the workplace, including whether the individual has operational control of the defendant corporation, an ownership interest, controls significant functions of the business or determines salaries or makes hiring decisions."  *Id*.  Likewise, the record is devoid of any allegations or evidence that James had an ownership interest, operational control, or the power to determine salaries or make hiring decisions.  For these reasons, any claims against James under the EPA should also be dismissed.

Plaintiff contends that James aided and abetted in the discrimination against her in violation of the NYSHRL.  *See* N.Y. Executive Law §§ 296(1) and 296(6) (allowing for individual liability if a defendant was "aiding and abetting the unlawful discriminatory acts of others").  However, in order for an individual to be liable as an aider and abettor, it must first be established that the employer is liable for discriminatory conduct. *M.O.C.H.A. Soc'y, Inc. V. City of Buffalo*, 872 F. Supp. 2d 264 (WDNY 2012); *Gallo v. Alitalia-Linee Aeree Italiane-Societa per Azioni*, 585 F. Supp. 2d 520 (SDNY 2008) ("Before accessorial liability can be found as to an alleged aider and abettor, the plaintiff must first establish liability as to the employer/principal.")  Here, the Court has

37

recommended that all claims of gender discrimination and retaliation, with the exception
of plaintiff's retaliation claim stemming from the elimination of her Guest Ambassador
position, be dismissed.  Therefore, these claims should be dismissed as to James as
well.  With respect to the remaining claim, there is no evidence in the record that James
was in any way involved in the decision to eliminate the Guest Ambassador position
and thus he cannot be found to have aided and abetted this conduct.  See *Feingold v.
New York*, 366 F.3d 138, 157 (2d Cir. 2004) ("An individual is liable as an aider and
abettor when he or she "actually participates in the conduct giving rise to a
discrimination claim.")

For these reasons, the complaint should be dismissed in its entirety as to
defendant James.

## CONCLUSION

For the foregoing reasons, it is recommended that the complaint be dismissed in
its entirety as to defendant Terence James.  It is recommended that defendant
Uniquest's motion for summary judgment as to plaintiff Barbara King's Equal Pay Act
claim be denied.  It is recommended that plaintiff be permitted to proceed with her
retaliation claim, as it relates to the elimination of the Guest Ambassador position,
without prejudice to defendant Uniquest's ability to file a renewed summary judgment
motion as to this claim only following a limited period of discovery.  It is recommended
that the remainder of defendant Uniquest's motion for summary judgment be granted.

Pursuant to 28 U.S.C. §636(b)(1), it is hereby **ORDERED** that this Report and
Recommendation be filed with the Clerk of Court.

Unless otherwise ordered by Judge Arcara, any objections to this Report and

Recommendation must be filed with the Clerk of Court within fourteen days of service of this Report and Recommendation in accordance with the above statute, Rules 72(b), 6(a), and 6(d) of the Federal Rules of Civil Procedure, and W.D.N.Y. L. R. Civ. P. 72. Any requests for an extension of this deadline must be made to Judge Arcara.

**Failure to file objections, or to request an extension of time to file objections, within fourteen days of service of this Report and Recommendation WAIVES THE RIGHT TO APPEAL THE DISTRICT COURT'S ORDER.** *See Small v. Sec'y of Health & Human Servs.*, 892 F.2d 15 (2d Cir. 1989).

The District Court will ordinarily refuse to consider *de novo* arguments, case law and/or evidentiary material which could have been, but were not, presented to the Magistrate Judge in the first instance. *See Paterson–Leitch Co. v. Mass. Mun. Wholesale Elec. Co.,* 840 F.2d 985, 990-91 (1st Cir. 1988).

Finally, the parties are reminded that, pursuant to W.D.N.Y. L.R.Civ.P. 72(b), written objections "shall specifically identify the portions of the proposed findings and recommendations to which objection is made and the basis for each objection, and shall be supported by legal authority." **Failure to comply with these provisions may result in the District Court's refusal to consider the objection.**

**SO ORDERED.**

DATED:     November 17, 2016
               Buffalo, New York


*Michael J. Roemer*
MICHAEL J. ROEMER
United States Magistrate Judge